UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RANDY HOPKINS, on behalf of himself and those similarly situated,**<br><br>Plaintiff,<br><br>v.<br><br>**ADVANCED CALL CENTER TECHNOLOGIES, LLC, CHRISTOPHER DEBBAS, JOSEPH LEMBO, and JOHN DOES 1–10,**<br><br>Defendants. | Civ. No. 20-06733 (KM) (ESK)<br><br>**OPINION** |

### KEVIN MCNULTY, U.S.D.J.:

Randy Hopkins received a debt-collection letter from Advanced Call Center Technologies, LLC ("ACCT"), a letter which he says does not clearly state how much he owed and to whom. On behalf of himself and a putative class, he sues ACCT and two of its executives, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* ACCT moves to dismiss the complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). (DE 27.)[1] For the following reasons, the motion is **GRANTED** as to the specific claim under 15 U.S.C. § 1692g(a)(1), but otherwise **DENIED**.

---

[1]  Certain citations to the record are abbreviated as follows:

DE = docket entry

Am. Compl. = Amended Complaint (DE 21)

Ltr. = Debt Collection Letter (DE 21-1)

Mot. = ACCT's Brief in Support of its Motion to Dismiss (DE 27-3)

Opp. = Hopkins's Brief in Opposition to the Motion to Dismiss (DE 34)

## I. BACKGROUND

Hopkins received a one-page collection letter in the mail. (Am. Compl. ¶ 24.) The top of the Letter is reproduced below:

**ADVANCED CALL CENTER TECHNOLOGIES, LLC**
PO Box 9091
Gray, TN 37615-9091
877-597-1385
TTY#: 844-252-5490

ACCOUNT #: ENDING IN REDACTED
TOTAL ACCOUNT BALANCE: $347.48
AMOUNT NOW DUE: $175.00

STATEMENT DATE: May 30, 2019

RE: JCPenney Credit Card Account

(Ltr.) The text of the Letter, as relevant here, reads as follows:

> This account has been listed with our office for collection.
>
> This notice has been sent by a collection agency. This is an attempt to collect a debt . . . .
>
> If the Amount Now Due is paid to Synchrony Bank and your account is brought up to date, we will stop our collection activity. All payments should be made directly to Synchrony Bank using the enclosed envelope. Do not send payments to this office.
>
> If circumstances are preventing you from paying the Amount Now Due referenced above, please call our office . . . .
>
> Synchrony Bank may continue to add interest and fees as provided in your agreement . . . .

(*Id.*) The Letter is signed by ACCT. (*Id.*) Below the text, there is a detachable pay slip:

PLEASE DETACH AND RETURN BOTTOM PORTION WITH YOUR PAYMENT

PO Box 9091
Gray, TN 37615-9091

STATEMENT DATE: 05/30/19
URL: www.jcp.com/credit
ACCOUNT #: ENDING IN REDACTED
TOTAL ACCOUNT BALANCE: $347.48
AMOUNT NOW DUE: $175.00

Randy Hopkins
REDACTED
REDACTED

Synchrony Bank/JCPenney Credit Services
PO Box 960090
Orlando, FL 32896-0090

(*Id.*)

Viewing the Letter as confusing, Hopkins sued ACCT and its executives, Christopher Debbas and Joseph Lembo, for violations of the FDCPA. (Am. Compl. ¶¶ 50–58.) He also seeks to represent a class of New Jersey residents who received "the same or similar" communications. (*Id.* ¶ 39.) ACCT moves to dismiss for failure to state a claim. (Mot.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) does not require that a pleading contain detailed factual allegations, but it must consist of "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must raise a claimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570. That standard is met when "factual content [] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim. The defendant bears the burden to show that no claim has been stated. *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016). I accept facts in the complaint as true and draw reasonable inferences in the plaintiff's favor. *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc).

## III. DISCUSSION

This is an FDCPA case. "The FDCPA protects against abusive debt collection practices by imposing restrictions and obligations on third-party debt collectors." *Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 585 (3d Cir. 2020) (en banc). To prevail on an FDCPA claim, a plaintiff must show that "the defendant has violated a [particular] provision of the FDCPA." *Barbato v. Greystone All., LLC*, 916 F.3d 260, 265 (3d Cir. 2019) (citation omitted). Hopkins alleges four such violations. (Am. Compl. ¶ 56.) I discuss each in relation to ACCT, and then discuss whether the individual defendants (Debbas and Lembo) can be liable, too.

### A. Violation of § 1692g(a)(1)

Hopkins alleges that the Letter violates § 1692g(a)(1). (Am. Compl. ¶ 56(c).) Section § 1692g requires a debt collector to provide the consumer with certain information in a written notice. § 1692g(a). Such "notices must intelligibly convey the § 1692g(a) requirements." *Riccio*, 954 F.3d at 594. When determining whether the information is intelligibly conveyed, courts view the writing from the viewpoint of the "least sophisticated debtor." *Id.* (citation omitted). This standard is "lower than the standard of a reasonable debtor," but it "preserves a quotient of reasonableness and presumes a basic level of understanding and willingness to read with care." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 418 (3d Cir. 2015) (quotation marks and alterations omitted).

One requirement of § 1692, found in subsection (a)(1), is that the notice state "the amount of the debt." § 1692(a)(1). Hopkins argues that the Letter does not convey the amount of debt because its "amount now due" language is ambiguous. (Opp. at 20–21.) "Amount now due," he says, can be interpreted as

(a) "a portion of the balance that the creditor will accept for the time being until the next bill arrives" *or*

(b) a "settlement offer on the account."

(*Id.* at 21–22 (citations omitted).)[2]

---

[2] Hopkins does not take issue with the Letter's statements about how interest accrues and how interest may affect the amount due. Indeed, the Letter's language is drawn from a "safe harbor" provision fashioned by the Seventh Circuit. *McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000). Other Courts of Appeals have either adopted this safe harbor or cited it approvingly. *Salinas v. R.A. Rogers, Inc.*, 952 F.3d 680, 685 (5th Cir. 2020) (citing approvingly); *Miller v. Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 76–77 (2d Cir. 2016) (adopting). Judges in this District, including me, have done the same. *Rock v. Greenspoon Marder, LLC*, Civ. No. 20-3522, 2021 WL 248859, at *7 (D.N.J. Jan. 26, 2021) (adopting); *Marucci v. Cawley & Bergmann, LLP*, 66 F. Supp. 3d 559, 565 (D.N.J. 2014) (citing approvingly); *accord Dotson v. Nationwide Credit, Inc.*, 828 F. App'x 150, 152–53 (3d Cir. 2020) (language telling a consumer that the amount owed can change is not deceptive).

Judge Vasquez of this District dealt with a similar issue, and I find his analysis persuasive. In *Reynolds v. Encore Receivable Management*, he drew from a Seventh Circuit opinion to explain that "[t]he phrase 'Now Due,' even to an unsophisticated consumer, simply means that the debt collector is willing to accept less than the total balance of the debt to bring the account to a current status." Civ. No. 17-2207, 2018 WL 2278105, *5 (D.N.J. May 15, 2018) (quoting *Olson v. Risk Mgmt. Alts., Inc.*, 366 F.3d 509, 513 (7th Cir. 2004)), *appeal dismissed*, No. 18-2269, 2018 WL 6536133 (3d Cir. Oct. 25, 2018). In other words, "the least sophisticated consumer would understand that the amount of the debt is the 'Balance' and that the amount 'Now Due' is the portion of the balance that the creditor will accept for the time being until the next bill arrives." *Olson*, 366 F.3d at 513.

The Letter here distinguishes between the "total account balance" and the "amount due now" along those lines. They are listed separately. *See Fiorarancio v. Zwicker & Assocs., P.C.*, Civ. No. 18-12793, 2019 U.S. Dist. LEXIS 96099, at *4–5 (D.N.J. June 6, 2019) (letter conveyed amount of debt when it stated total balance and amount owed separately). What is more, the Letter makes clear that what the customer must pay now is only the "amount due now," because it says, "[i]f the Amount Now Due is paid to Synchrony Bank and your account is brought up to date, we will stop our collection activity." (Ltr.) So, as Judge Vasquez and the Seventh Circuit explained, the Letter makes explicit what the function of the "amount due now" is. Moreover, this is an attempt to collect a credit-card debt, and credit card owners are used to seeing bills or statements that reflect an amount currently due and a larger account balance.[3] *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010) ("'[T]he least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world . . . ." (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993))); *Oppong v. First Union*

---

[3] That said, this Letter is not an ordinary credit card bill, but an attempt to collect amounts past due, so the analogy is far from perfect.

*Mortg. Corp.*, 566 F. Supp. 2d 395, 402 (E.D. Pa. 2008) (same). Indeed, other courts have reviewed this exact letter format and found no FDCPA violation. *E.g.*, *Untershine v. Encore Receivable Mgmt., Inc.*, No. 18-CV-1484, 2019 WL 3766564, at *7 (E.D. Wis. Aug. 9, 2019). Thus, the Letter adequately conveys the amount of the debt to the least sophisticated debtor.

I feel constrained by the case law to grant the motion to dismiss as to this particular aspect of the claims. I cannot close this discussion, however, without expressing some judicial displeasure at the creditor's seeming reluctance to just come out and say what it means:

> "The total balance is $347.48. If you pay $175 now, we'll stop collection activities, but you will still owe us the remaining balance of $172.48. ($347.48 minus $175 equals $172.48.) We'll bill you for that remaining balance later."

Was that so hard? Collectors' insistence on going right up to the line has produced seemingly endless litigation, flyspecking the precise wording of collection letters, in cases which have come to take up a disproportionate share of the federal docket. It is hard to escape the impression that the creditor finds a clear statement undesirable, and is still hoping that a certain number of debtors will pay up if they don't understand that they are not retiring the debt.

As it stands, however, I hold that Hopkins cannot rely on § 1692g(a)(1) to state an FDCPA claim, and to that extent the motion to dismiss is granted.

### B. Violation of § 1692g(a)(2)

Hopkins alleges that the Letter fails to convey "the name of the creditor to whom the debt is owed," as required by § 1692g(a)(2). (Am. Compl. ¶ 56(d).) He argues that the Letter mentions ACCT, JCPenney, JCPenney Credit Services, and Synchrony Bank, but does not specify which entity is owed the money. (Opp. at 11.)

Here, there is no binding authority to guide me. The most helpful persuasive authority is a non-precedential decision of the Third Circuit, *Gross v. Lyons Doughty & Veldhuis, P.C.*, 779 F. App'x 864 (3d Cir. 2019). The *Gross* letter had the subject line "Capital One Bank (USA), N.A., assignee of HSBC BANK NEVADA N.A. RCS DIRECT MARKETING/ORCHARD." *Id.* at 865. The

letter then stated in text that the collector (LDV) "represents Capital One Bank (USA), N.A., assignee of HSBC BANK NEVADA N.A. RCS DIRECT MARKETING/ORCHARD BANK in connection with [Gross's] account." *Id.*

The Third Circuit held that the letter failed to identify the creditor, citing three reasons. First, the letter did not state straightforwardly who the creditor was, or say that Capital One owned the debt. *Id.* at 866. Second, the letter referred to Capital One as an "assignee," a legal term which consumers might not understand. *Id.* Third, "the letter's reference to three other entities, as well as its assignee language, overshadowed the creditor's identity." *Id.* (quotation marks and citation omitted).

The first and third *Gross* factors are present here. First, the Letter never just states who the creditor is or who owns the debt. Next, the Letter refers to multiple entities but is never clear on who the creditor is, who owns the debt, or what their relationship is.

Again, it's not so hard. Circumstances vary, but here's an example of what I mean:

> "Who you owe the money to: ABC, which issued your DEF credit card.
>
> Who you should pay: ABC has authorized GHI to collect the debt on its behalf. Make out your check to GHI."

This Letter is somewhat confusing to me, and surely confusing to the consumer. The subject line says "RE: JCPenney Credit Card Account," and the first line of text is "This account has been listed with our office for collection." (Ltr.) "Listed?" Okay, let that pass; The reader now has probably gleaned that she allegedly owes money for charges on a JCPenney credit card. But a few lines down, when the Letter gets to payment, it says that the amount due must be paid to Synchrony Bank. But who is Synchrony Bank and what do they have to do with my JCPenney card? Finally, the detachable payment slip is addressed to "Synchrony Bank/JCPenney Credit Services" with one PO Box number. Are Synchrony and JCPenney Credit Services the same thing?

7

Related? A joint venture? Just PO Box buddies? The Letter does not say, which means that a consumer cannot discern who owns the debt.

Other courts have found confusion in similar or near-identical letters. The only precedential opinion on this issue is from the Seventh Circuit in *Steffek v. Client Services*, 948 F.3d 761 (7th Cir. 2020). The letter there had the subject line "RE: CHASE BANK USA, N.A." but the text told the consumer to make a payment to the collector, Client Services. *Id.* at 763–64. The Seventh Circuit held that this was unclear as to the identity of the creditor (Chase) because (1) Chase was never identified as the creditor, and (2) the subject line suggested that Chase was the creditor, but the letter's unexplained direction to pay Client Services could "imply[] that Client Services itself was then the creditor." *Id.* at 765.

This Letter likewise fails to state the identity of the creditor, and it directs payment to another entity that apparently is not the creditor. In fact, the Letter here is more confusing because the *Steffek* letter named only two entities (Chase and Client Services), whereas the Letter here names three (ACCT, JCPenney, and Synchrony).[4] Some district courts are in accord. *E.g.*, *Nicolaides v. Divine & Serv., Ltd.*, 382 F. Supp. 3d 251, 254 (E.D.N.Y. 2019) (letter referencing the collector, the retailer, and Synchrony was unclear as to who was the creditor); *White v. Pro. Claims Bureau, Inc.*, 284 F. Supp. 3d 351, 362 (E.D.N.Y. 2018) (Bianco, J.) (letter listing creditor in subject line but directing payment to the collector, while never explicitly identifying the creditor, was unclear).

In response, ACCT points primarily to two district court opinions. (Mot. at 11–17.) To the extent they are not distinguishable, I do not elect to follow them.

In the first, *Macelus v. Capital Collection Service*, the letter's subject line said "Account for: Advanced Endoscopy & Surgical Ctr, LLC"; the text directed payment to "this office"; the letterhead had the collector's name; and the

---

[4]  I am not separately counting a fourth, "JCPenney Credit Services."

detachable pay slip was addressed to the collector. Civ. No. 17-2025, 2017 WL 5157389, at *1 (D.N.J. Nov. 7, 2017). Judge Kugler held that it was clear enough who the creditor was, because the subject line referred to the account as being *for* the creditor *Id.* at *3. Nor, he continued, did the references to the collector overshadow that subject line, because the letter adequately conveyed that the collector was seeking to collect on behalf of that account. *Id.*

Thus, *Marcelus* held that, as between the collector and the creditor, the letter's heading, text, and pay slip made it clear enough which was which. Here, in contrast, the Letter named two entities *in addition to* the one which (I presume) is the collector. In such a case, courts are more willing to find potential confusion. *See Nicolaides*, 382 F. Supp. 3d at 254. *Marcelus* is distinguishable because the confusion here arises because the Letter names, not just a debt-holder and its collector, but two possible competing debt-holders, JCPenney and Synchrony.

ACCT's second case, *Lucchi v. Advanced Call Center Technologies, LLC*, is concededly more on-point, and it involves a letter in the same format as the Letter here. No. 15-CV-5270, 2016 U.S. Dist. LEXIS 197115, at *3–5 (E.D.N.Y. June 15, 2016). *Lucchi* held that that letter did not violate § 1692g(a)(2). *Id.* at *27. That court had three essential bases for its holding in defendant's favor. First, it reasoned that "[t]he references to the underlying retail stores are obviously intended merely to jog the debtors' memories," while "every reference . . . to making a payment that could plausibly be interpreted as signifying a creditor, relates solely to Synchrony." *Id.* at *24. Second, the court believed that the consumer would be able to "discern the logical relationship between" the retailer and Synchrony. *Id.* at *24–25. Third, the court added that, if there were potential confusion, the letter provided phone numbers to call, and it took the plaintiffs to task for "immediately resort[ing] to commencing a federal lawsuit." *Id.* at *26. Respectfully, I am not persuaded.

First, it is inaccurate to say, as *Lucchi* does, that "every reference . . . to making a payment . . . relates solely to Synchrony." *Id.* at *24. On the contrary,

9

even the pay slip itself is addressed to two entities: "Synchrony Bank/JCPenney Credit Services." (Ltr.) Additionally, the pay slip lists JCPenney's URL along with the statement date, the account number, the balance, and amount due. (*Id.*) While the text does not refer to JCPenney as payee, the parts of the letter dealing with payment, particularly the pay slip, do. We are instructed to "read collection notices in their entirety." *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 299 (3d Cir. 2008). So the references to JCPenney in the pay slip mean that not "every" reference to payment relates solely to Synchrony.

Second, *Lucchi*'s conclusion that the least sophisticated debtor could discern the relationship between Synchrony and the retailer is unconvincing. Nothing in the Letter explains the relationship between Synchrony and the retailer; nor does the Letter give simple instructions (whom to pay and why) that might make such information superfluous. In this, *Lucchi* is out of step even with other courts within the Eastern District of New York. *Nicolaides,* for example, explained that a letter listing both Lowe's and Synchrony was confusing, because "the account was presumably opened at a Lowe's retail location, not directly through Synchrony." 382 F. Supp. 3d at 254. The consumer may not know that Synchrony—respectfully, not a household name—services JCPenney credit cards.[5] The least sophisticated consumer surely did not know or care about that detail when opening a retail credit card account. In short, the consumer cannot know why it is that she is being asked to pay Synchrony.

The FDCPA is intended to protect consumers—especially the "gullible"—from abusive collection practices. *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006). Of course, consumer credit and debts can move around between financial institutions and corporations, including retailers, but most consumers do not understand this well. When time comes for consumers to

---

[5]   Or even that such servicing arrangements exist. Retail credit cards are commonly marketed through a strong brand identification with the merchant.

10

pay, they should be able to know that their payment will be applied to their debt—especially when they are being asked to pay an unfamiliar entity.[6] *See Gross*, 779 F. App'x at 866 (expressing "significant concerns about whether the least sophisticated consumer would understand" why its payment was going to an assignee of the debt). The Letter here did not do that; to assume that consumers could figure out financial institutions' relationships, in my view, impermissibly ratchets up the "least sophisticated debtor" standard.

Third, *Lucchi* reasoned that if the consumers were confused, they could have called the phone number provided instead of suing. That reasoning, too, runs counter to the statute and its purpose. Taken to its logical conclusion, it would subvert the requirement of full disclosure and place the burden of inquiry on the consumer to obtain the necessary information. The FDCPA requires the *letter itself* to "intelligibly convey" the necessary information, *Riccio*, 954 F.3d at 594, not merely to tell the consumer where she might find it on her own.

To sum up, *Gross*, the most persuasive out-of-Circuit authority, and the statute itself support Hopkins's § 1692g(a)(2) claim. Thus, Hopkins states an FDCPA claim based on § 1692(a)(2), and the motion to dismiss is to that extent denied.

### C. Violation of § 1692e

Hopkins alleges that the Letter violates § 1692e, which provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." (Am. Compl. ¶ 56(a).) A letter runs afoul of § 1692e when "it can be reasonably read to have two or

---

[6] All of the foregoing assumes, moreover, that the letter *is* sent on behalf of the legitimate creditor, and that the creditor has not, for example, got the wrong person. By failing to clearly identify the creditor, the Letter defeats the fundamental function of telling the consumer what she allegedly owes, and to whom, so that she can verify that there has not been a mistake—or that the direction to pay some unfamiliar third party is not a consumer scam.

more different meanings, one of which is inaccurate." *Brown*, 464 F.3d at 455 (quotation marks and citations omitted).

This Letter is capable of more than one meaning. By failing to explain the relationship between Synchrony and JCPenney, the Letter leaves open the question of who owns the debt. In other words, a reader could think that (a) Synchrony owns the debt (the text says payment goes to it), (b) JCPenney owns the debt (the subject line and pay slip suggest that it is the account holder), or (c) that they have some time of joint operation, the contours of which are unclear (the pay slip is addressed to both, with a slash between their names). Not all those readings can be right. Thus, Hopkins states a § 1692e claim. *See White*, 284 F. Supp. 3d at 363–64 (ambiguity as to who owns the debt supported § 1692e claim).

Hopkins states an FDCPA claim based on § 1692e, and to that extent, the motion to dismiss is denied.

### D. Violation of § 1692f

Hopkins alleges that the Letter violates § 1692f, which provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Although Hopkins's brief does not discuss his § 1692f theory specifically, I can infer at least a theory that the Letter is unfair because it does not identify the creditor.[7]

At worst, then, the § 1692f theory is duplicative. Keeping the § 1692f claim "would have no practical effect on the discovery proceedings, and can await the development of a factual record, summary judgment, and the

---

[7] Moreover, § 1692f(1) specifically prohibits "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt." Hopkins's credit card agreement is not provided, but it is plausible that it specifies to whom amounts are owed, and that provision does not match up with the Letter. Or at the least, the Letter could be read to collect an amount owed to Synchrony, JCPenney, or both, while the agreement only provides for one of those outcomes.

narrowing of issues for trial." *Thomas v. Youderian*, 232 F. Supp. 3d 656, 678 n.22 (D.N.J. 2017).

The motion to dismiss is denied as to the § 1692f claim.

### E. Individual Liability

Assuming *arguendo* that an FDCPA claim is stated against ACCT, ACCT moves to dismiss the claims against Debbas and Lembo, because the allegations about their individual involvement are too conclusory. (Mot. at 20–21 n.3.)[8] The Third Circuit has held that, when a general partnership meets the definition of "debt collector," then "a general partner exercising control over the affairs of such a partnership may be held liable under the FDCPA for the acts of the partnership." *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 405 n.29 (3d Cir. 2000). But the Third Circuit has not provided any guidance when it comes to other business organizations besides partnerships. *Santiago v. Apothaker Scian P.C.*, Civ. No. 16-1432, 2017 WL 2798498, at *2 n.18 (D.N.J. June 28, 2017). In *Pollice*'s wake, some courts in this Circuit have taken it for a more general proposition that, when individuals exercise control over the affairs and operations of an entity, individuals can be liable. *E.g.*, *Albanese v. Portnoff Law Assocs, Ltd.*, 301 F. Supp. 2d 389, 400 (E.D. Pa. 2004).

The Amended Complaint alleges that ACCT is an LLC (limited liability company), and that Debbas and Lembo are "chief executive officer, partner,

---

8   ACCT raises this argument in a footnote. Courts have often found, especially at the appellate level, that such cursory treatment is equivalent to a forfeiture of the issue. *John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997); *see Yates Real Estate, Inc. v. Plainfield Zoning Bd. of Adjustment*, 404 F. Supp. 3d 889, 913 n.28 (D.N.J. 2019). The "footnote rule" operates when the argument contained in the footnote is undeveloped, as is usually the case. *See John Wyeth*, 119 F.3d at 1076 n.6 ("[A]rguments raised *in passing (such as, in a footnote)*, but not squarely argued, are considered waived." (emphasis added)).

Nevertheless, if the footnote contains substantive argument, plus citations, and puts the opposing party on notice of the argument, a court may elect to consider it. *E.g.*, *United States v. Redd*, 562 F.3d 309, 314 (5th Cir. 2009). ACCT's footnote does that, and Hopkins responds. (Opp. at 23–26) Preferring, as always, to reach the merits, I will consider ACCT's argument.

president, secretary, treasurer and director of ACCT." (Am. Compl. ¶¶ 6–8.) Drawing inferences in Hopkins's favor, it is plausible alleged that Debbas and Lembo exercise control over ACCT. *See Gross v. Weinstein, Weinburg & Fox, LLC*, 123 F. Supp. 3d 575, 580 (D. Del. 2015) (finding plausible claim because "[w]hile the Complaint does not specifically allege how these individual Defendants were involved in the acts or omissions which constitute the basis for Plaintiffs' claims, it does allege that these Defendants are Co–Owner and General Manager"); *Marucci v. Cawley & Bergmann, LLP*, 66 F. Supp. 3d 559, 564 (D.N.J. 2014) (declining to impose a requirement that a plaintiff plead specific acts of control).

ACCT's structure and Debbas's and Lembo's roles will require factual development. But for now, considering the facts available to the plaintiff, these allegations suffice to go forward. ACCT's motion to dismiss the claims against Debbas and Lembo will be denied.

## IV.   CONCLUSION

For the reasons set forth above, the motion to dismiss is **GRANTED** as to the specific claim under 15 U.S.C. § 1692g(a)(1), but otherwise **DENIED**.

A separate order will issue.

Dated: April 7, 2021

/s/ Kevin McNulty

───────────────────────────
**Hon. Kevin McNulty
United States District Judge**