# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RANDY HOPKINS, *on behalf of himself and those similarly situated,*

        Plaintiff,

    vs.

ADVANCED CALL CENTER
TECHNOLOGIES, LLC;
CHRISTOPHER DEBBAS;
JOSEPH LEMBO,
and JOHN DOES 1 to 10,

        Defendants.

Case No. 2:20-cv-06733-AME

---

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEY'S FEES AND COSTS

---

Yongmoon Kim, Esq.
Philip D. Stern, Esq.
Mark Jensen, Esq.
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
Tel. and Fax 201-273-7117

*Attorneys for Plaintiff and the Class*

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................9

II.   BACKGROUND AND PROCEDURAL HISTORY ....................................11

III.  SUMMARY OF THE TERMS OF THE SETTLEMENT............................12

    A.    DEFINITION OF THE PROPOSED CLASS ....................................12

    B.    BENEFITS TO THE CLASS........................................................12

    C.    CAFA NOTICE, NOTICE TO THE CLASS, AND REQUESTS FOR
        EXCLUSION........................................................................13

IV.   THE SETTLEMENT IS FAIR AND REASONABLE AND SHOULD
     BE FINALLY APPROVED.........................................................15

    A.    STANDARDS AND PROCEDURES FOR FINAL APPROVAL OF CLASS
        ACTION SETTLEMENTS ...........................................................15

    B.    APPLICATION OF THE GIRSH FACTORS....................................18

        1.    Complexity, Expense and Likely Duration of the
            Litigation........................................................................18

        2.    The Reaction of the Class to the Settlement..................20

        3.    The Stage of the Proceedings and the Amount of
            Discovery Completed ......................................................20

        4.    The Risks of Establishing Liability ...............................21

        5.    The Risks of Establishing Damages ..............................22

        6.    Risks of Maintaining the Class Action Through
            Trial...............................................................................23

        7.    Ability of the Defendants to Withstand Greater
            Judgment........................................................................23

        8.    The Range of Reasonableness of the Settlement in
            Light of the Best Possible Recovery and All
            Attendant Risks of Litigation ........................................25

V.    THE PROPOSED INCENTIVE AWARD TO THE CLASS
      REPRESENTATIVE IS FAIR AND REASONABLE..................................26

VI.   THE FEES AND EXPENSES SOUGHT BY CLASS COUNSEL ARE
      FAIR AND REASONABLE AND SHOULD BE APPROVED..................31

      A.    LODESTAR ANALYSIS CONFIRMS THAT THE FEE REQUESTED IS
            REASONABLE..........................................................................32

      B.    PROPORTIONALITY IS NOT REQUIRED IN ASSESSING THE FEE
            REQUEST ................................................................................34

VII.  CONCLUSION...............................................................................37

# TABLE OF AUTHORITIES

## CASES

*Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.,*
  263 F.R.D. 226 (E.D. Pa. 2009) ............................................................24

*Amchem Prods. Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................. 15, 23, 26

*Berrios v. Sprint Corp.*,
  CV-97-0081 (CPS), 1998 U.S. Dist. LEXIS 22833 (E.D.N.Y. Sep. 10, 1998)...29

*Blum v. Stenson*,
  465 U.S. 886 (1984) ............................................................34

*Bogosian v. Gulf Oil Corp.,*
  621 F. Supp. 27 (E.D.Pa.1985)............................................30

*Bonett v. Educ. Debt Servs., Inc.*,
  No. 01–6528, 2003 U.S. Dist. LEXIS 9757 (E.D. Pa. May 9, 2003) .................30

*Bryan v. Pittsburgh Plate Glass Co.*,
  494 F.2d 799 (3d Cir. 1974) ............................................17

*Brytus v. Spang & Company*,
  203 F.3d 238 (3d Cir. 2000) ............................................33

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981) ............................................16

*Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ................................... 21, 22, 24

*Cendant Corp., Derivative Action Litig.*,
  232 F. Supp. 2d 327 (D.N.J. 2002).......................................28

*City of Burlington v. Dague,*
  505 U.S. 557 (1992) ............................................33

*Compact Disc Minimum Advertised Price Antitrust Litigation*,
  292 F. Supp. 2d 184 (D. Me. 2003)........................................................................27

*Computron Software*,
  6 F. Supp. 2d 313 (D.N.J. 1998)...........................................................................19

*Cope v. Duggins*,
  203 F. Supp. 2d 650 (E.D. La. 2002) ...................................................................35

*Dewey v. Volkswagen of Am.*,
  728 F. Supp. 2d 546 (D.N.J. 2010) *rev'd and remanded on other grounds Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3d Cir. 2012).........................30

*Dewey v. Volkswagen of Am.*,
  909 F. Supp. 2d 373 (D.N.J. 2012).......................................................................16

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*,
  137 F.R.D. 240 (S.D. Ohio 1991) ........................................................................28

*Fisher Bros. v. Phelps Dodge Indus., Inc.*,
  604 F. Supp. 446 (E.D. Pa. 1985)................................................................. 16, 25

*Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) .............................................................. 16, 22, 24, 25

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) .................................................................... 16, 17, 23

*Graziano v. Harrison*,
  950 F.2d 107 (3d Cir. 1991) ................................................................................31

*Gunter v. Ridgewood Energy Corporation*,
  223 F.3d 190 (3d Cir. 2000) ................................................................................33

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ............................................................................... 32, 33, 34

*Ingram v. Coca-Cola Co.*,
  200 F.R.D. 685 (N.D. Ga. 2001) .........................................................................27

*Ins. Brokerage Antitrust Litig.*,
  579 F.3d 241 (3d Cir. 2009) ..................................................................30

*Lachance v. Harrington*,
  965 F. Supp. 630 (E.D. Pa. 1997)..........................................................27

*Lake v. First Nationwide Bank*,
  900 F. Supp. 726 (E.D. Pa. 1995).........................................................26

*Linerboard Antitrust Litig.*,
  2004 U.S. Dist. LEXIS 10532 (E.D. Pa. June 2, 2004) ........................28

*Machulsky v. Lilliston Ford, Inc.*,
  No. A-2987-06T5, 2008 N.J. Super. Unpub. LEXIS 2603, 2008 WL 2788073
  (App. Div. July 21, 2008) ......................................................................27

*McBean v. City of N.Y.*,
  233 F.R.D. 377 (S.D.N.Y. 2006)...........................................................29

*Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .................................................................28

*Montgomery v. Aetna Plywood, Inc.*,
  231 F.3d 399 (7th Cir. 2000), *cert. denied*, 532 U.S. 1038 (2001).......................28

*Norton v. Wilshire Credit Corp.*,
  36 F. Supp. 2d 216 (D.N.J. 1999)..........................................................35

*Orloff v. Syndicated Office Sys, Inc.*,
  No. 00–5355, 2004 U.S. Dist. LEXIS 7151 (E.D. Pa. Apr.22, 2004) ................30

*Oslan v. Law Offices of Mitchell N. Kay*,
  232 F. Supp. 2d 436 (E.D. Pa. 2002)......................................................35

*Perry v. FleetBoston Fin. Corp.*,
  229 F.R.D. 105 (E.D. Pa. 2005) ............................................................26

*Pet Food Prods. Liab. Litig.*,
  629 F.3d 333 (3d Cir. 2010) ........................................................... 17, 18

*Protective Comm. For Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*,
  390 U.S. 414 (1968) ............................................................................16

*Prudential Ins. Co. of Am. Sales Practices Litig.*,
  148 F.3d 283 (3d Cir. 1998) ...................................................... passim

*Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005) ................................................................17

*Rodriguez v. West Publishing Corp.*,
  563 F.3d 948 (9th Cir. 2009)...............................................................26

*Ruckelshaus v. Sierra Club*,
  463 U.S. 680 (1983) ............................................................................32

*Safety Components Inc. Sec. Litig.*,
  166 F. Supp. 2d 72 (D.N.J. 2001).......................................................23

*Sheffer v. Experian Information Solutions, Inc.*,
  290 F. Supp. 2d 538 (E.D. Pa. 2003)..................................................35

*Sheppard v. Consol. Edison Co. of N.Y., Inc.*,
  94-CV-0403 (JG), 2002 U.S. Dist. LEXIS 16314, 2002 WL 2003206 (E.D.N.Y.
  Aug. 1, 2002)......................................................................................29

*SmithKline Beckman Corp. Sec. Litig.*,
  751 F. Supp. 525 (E.D. Pa. 1990).......................................................27

*Student Public Interest Research Group of New Jersey v. AT&T Bell Laboratories*,
  842 F.2d 1436 (3d Cir. 1988) .............................................................36

*Sullivan v. DB Investments, Inc.*,
  667 F.3d 273 (3d Cir. 2011) ...................................................... passim

*Varacallo v. Mass. Mut. Life Ins. Co.*,
  226 F.R.D. 207 (D.N.J. 2005) ..................................................... 28, 30

*Walsh v. Great Atl. & Pac. Tea Co.*,
  96 F.R.D. 632 (D.N.J.), *aff'd*, 726 F.2d 956 (3d Cir. 1983) ...............16

*Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) .......................................................... passim

*Washington v. Philadelphia County Court of Common Pleas*,
   89 F.3d 1031 (3d Cir. 1996) ...................................................................35

*Weiss v. Mercedes-Benz of N. Am. Inc.*,
   899 F. Supp. 1297 (D.N.J. 1995).............................................................26

*Williams v. First Nat'l Bank*,
   216 U.S. 582 (1910) ...............................................................................15

### STATUTES

15 U.S.C. § 1692g.............................................................................9, 11

15 U.S.C. § 1692k ................................................................ 13, 22, 24, 31

28 U.S.C. § 1332(d) ...............................................................................13

28 U.S.C. § 1715 .............................................................................. 10, 13

### RULES

Fed. R. Civ. P. 23(a).............................................................................16

Fed. R. Civ. P. 23(b) ............................................................................16

Fed. R. Civ. P. 23(e)............................................................................15

Fed. R. Civ. P. 23(e)(2).........................................................................15

### OTHER AUTHORITIES

*Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L.
   REV. 1303 (2006) ...............................................................................30

MANUAL FOR COMPLEX LITIGATION (THIRD), § 24.11 (1995).......................... 32, 33

*Standards and Guidelines for Litigating and Settling Consumer Class Actions* 31
   (June 2014) ......................................................................................27

## I.   INTRODUCTION

Plaintiff Randy Hopkins respectfully requests final approval of the parties' Class Action Settlement Agreement. The Agreement provides a fair and reasonable recovery to Class—indeed, it provides the Class with a better outcome than the most successful result from fully litigating this case.

In addition to this Brief, Plaintiff submits the Declarations of Yongmoon Kim and Philip D. Stern in support of the request for final approval. For the Court's convenience, a copy of the Agreement is Exhibit A to the Stern Declaration.

The Class consists of New Jersey consumers to whom Defendants mailed a certain form collection letter on Advanced Call Center Technologies, LLC letterhead between May 30, 2019 and August 30, 2021. Plaintiff claims those letters failed to provide "the name of the creditor to whom the debt is owed" as required under 15 U.S.C. § 1692g(a)(2). In addition to Plaintiff, Defendant identified 103 individuals meeting the class definition. The Court approved the form of Notice to be mailed to those individuals. All but four of them received it. Thus, there are 99 Remaining Class Members (as defined by the Agreement) who, if the Court approves the Agreement, will share in the $10,300 Class Fund (*i.e.*, $104.04 per Remaining Class Member (leaving 4¢ due to rounding)). (The Agreement provides that any undistributed Class Funds are to be paid to a "Beneficiary" to be designated by the Court. Plaintiff asks the Court to designate

Legal Services of New Jersey.)

The Agreement also provides for Defendants to pay $2,000 to Plaintiff combined for his FDCPA claim and an incentive award, and $51,000 to Class Counsel for attorney's fees and costs.

The Agreement is the result of extensive arm's length settlement discussions including two sessions mediated by the Court.

The Class Fund exceeds the maximum possible recovery under the FDCPA had the case been fully litigated. The amount payable to Plaintiff includes the maximum (but not in excess of the maximum) plus a $1,000 incentive award which is below the average in a settled class action. Furthermore, the agreed-upon amount for attorney's fees is less than Class Counsel's lodestar—which is the presumptive method for determining the amount of a reasonable attorney's fee.

In exchange for these payments, Defendants will receive a release from the Class of the Class Claims and from Plaintiff for all claims arising from Defendants' conduct attempting to collect the subject debt from him.

In response to the Class Notice, no class member has asked to be excluded and no class member has objected to the terms of the settlement. In addition, none of the governmental officials who received notice of the settlement in accordance with 28 U.S.C. § 1715 objected to or otherwise communicated with counsel regarding the subject settlement.

Plaintiff requests the Court grant final approval of the Settlement including approving the incentive award to Plaintiff and Class Counsel's fees and costs.

## II.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff commenced the instant action on June 1, 2020. (ECF No. 1.)

On August 24, 2020, Plaintiff filed an Amended Complaint identifying several specific FDCPA provisions which Defendants allegedly violated. (ECF No. 21). On September 28, 2020, Defendants moved under FED. R. CIV. P. 12(b)(6) to dismiss the Amended Complaint for failure to state a claim upon which relief could be granted. (ECF No. 27).

By its Opinion (ECF No. 41) and Order (ECF No. 42) on April 7, 2021, the Court partially granted Defendants' motion but left most of the alleged violations intake including the claim for violation of 15 U.S.C. § 1692g(a)(2) (requiring a debt collector to give written notice of "the name of the creditor to whom the debt is owed.")

On May 5, 2021, Defendants filed their Answer (including affirmative defenses). (ECF No. 52.)

Thereafter, the Parties, through their respective counsel, engaged in protracted and substantive settlement discussions which explored the resolution of this lawsuit on a class basis. Defendants provided Plaintiff with discovery as to, *inter alia*, class size, net worth, and issues concerning the merits of Plaintiff's

claims and Defendants' defenses. (Stern Decl. ¶8) The foregoing included

information marked "Confidential Attorneys' Eyes Only" pursuant to the

Discovery Confidentiality Order (ECF No. 55). (*Id.*) As the Agreement

evidences, the parties ultimately reached settlement as to all issues, including

relief to the class and relief to the named Plaintiff.

### III.    SUMMARY OF THE TERMS OF THE SETTLEMENT

#### A. DEFINITION OF THE PROPOSED CLASS

The Agreement defines the Class as follows:

> All natural persons to whom a letter on the letterhead of
> Advanced Call Center Technologies, LLC was mailed to
> a New Jersey address on or after May 30, 2019, but before
> August 30, 2021 and the letter is titled "FIRST NOTICE"
> and included "RE: JCPenney Credit Card Account."

Agreement ¶1.e.

#### B. BENEFITS TO THE CLASS

The Defendants represent that, excluding the named Plaintiff, there are 103

persons who meet the Class definition. Agreement Recital I. Defendants, without

admitting liability or wrongdoing, have agreed to establish a Class Fund in the amount

of $10,300.00 which shall be distributed in equal amounts to the Remaining Class

Members. The Remaining Class Members exclude those Class members who either

asked to be excluded or who the Administrator determined to have not received the

Class Notice because no valid address was found. Agreement ¶1.aa. There were no

requests for exclusion but four Class members did not receive the Notice. Therefore, there are 99 Remaining Class Members.

In addition, Defendants have also agreed to pay Plaintiff, $2,000.00, consisting of $1,000 for Plaintiff's claim for statutory damages under 15 U.S.C. § 1692k(a)(2)(B) and, subject to the Court's approval, $1,000 as an incentive award on account of Plaintiff's services to the Class. Agreement ¶2.b.

Any portion of the Class Fund which is not distributed (due to either rounding to ensure that each member receives an equal amount, a distribution check which is not deliverable despite reasonable diligence, or a check which is not cashed prior to its expiration date) shall be paid to the "Beneficiary." Agreement ¶¶1.c. and 6.g. Under the Agreement, the Court is to designated the Beneficiary which must be "an eleemosynary institution which has no religious or political." *Id.* Plaintiff asks the Court to designate Legal Services of New Jersey.

### C. CAFA NOTICE, NOTICE TO THE CLASS, AND REQUESTS FOR EXCLUSION

Notice under the Class Action Fairness Act (28 U.S.C. §§ 1332(d), 1715) was sent on October 13, 2022. (*See* Declarations of Dana Boub, ECF Nos. 74, 77).

The Administrator, RG/2 Claims Administration LLC, mailed the Court-approved Notice to 104[1] class members. Stern Decl. ¶4 and ECF No. 77. After the

---

[1] The number of 104 Class members includes Plaintiff.

Administrator received the class mailing list on October 12, 2022 containing the information for the class members, it printed and mailed the Notice on October 14, 2022 *via* First-Class Mail with postage prepaid. ECF No. 77 at ¶¶4, 10.

The Administrator advised that, as of January 4, 2023, ten Notices had been returned by the U.S. Postal Service with a new address and were re-mailed, and four Notices were returned as undeliverable by the U.S. Postal Service without forwarding addresses. ECF No. 77 at ¶10. Using a skip-trace procedure, the Administrator confirmed new addresses for six of the returned Notices leaving four who did not receive notice. *Id.* Thus, excluding Plaintiff and the four Class members (for whom a valid address could not be obtained) leaves 99 Class members who received the Notice.

Requests for exclusion and objections to approving the Agreement were due by December 9, 2022. The Administrator reported that, as of January 4, 2023, it had not received any requests for exclusion or any objections. ECF No. 77 at ¶§11, 12. The Administrator further reported that it received no objections to approving the Agreement, no objections appear on the docket, and Class Counsel has not received any objections. Stern Decl. ¶18.

## IV.    THE SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE FINALLY APPROVED

### A. STANDARDS AND PROCEDURES FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

"Compromises of disputed claims are favored by the courts." *Williams v.*

*First Nat'l Bank*, 216 U.S. 582, 595 (1910); *In re Prudential Ins. Co. of Am. Sales*

*Practices Litig.*, 148 F.3d 283, 317 (3d Cir. 1998). Settlement spares the litigants

the uncertainty, delay, and expense of a trial, while simultaneously reducing the

burden on judicial resources. Federal Rule of Civil Procedure 23(e) mandates that a

class action cannot be settled without court approval:

> A class action shall not be dismissed or compromised
> without the approval of the court, and notice of the
> proposed dismissal or compromise shall be given to all
> members of the class in such manner as the court directs.

*See also Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 617 (1997); *Prudential* at

316.

"Rule 23(e) provides that a proposed settlement may only be approved 'after

a hearing and on finding that it is fair, reasonable, and adequate.'" *Sullivan v. DB*

*Investments, Inc.*, 667 F.3d 273, 319 (3d Cir. 2011) (en banc) (quoting Fed. R. Civ.

P. 23(e)(2)). In a class action, the "court plays the important role of protector of the

[absent members'] interests, in a sort of fiduciary capacity." *In re Gen. Motors*

*Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir.

1995) ("GM Truck"). The ultimate determination whether a proposed class action settlement warrants approval resides in the court's discretion. *Protective Comm. For Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968); *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975).

"For the Court to certify a class, the plaintiffs must satisfy all of the requirements of Rule 23(a), and one of the requirements of Rule 23(b). Fed. R. Civ. P. 23(a)-(b). Class certification cannot be presumed and a class may be certified only after a rigorous analysis demonstrates that all Rule 23 requirements are met." *Dewey v. Volkswagen of Am.*, 909 F. Supp. 2d 373, 382 (D.N.J. 2012).

While the Court has discretion in determining whether to approve a settlement, it should be hesitant to substitute its judgment for that of the parties who negotiated the settlement. *Fisher Bros. v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446, 452 (E.D. Pa. 1985). "Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement. They do not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) (citation omitted); *see also Walsh v. Great Atl. & Pac. Tea Co.*, 96 F.R.D. 632, 642-43 (D.N.J.), *aff'd*, 726 F.2d 956 (3d Cir. 1983). The court may rely on the judgment of experienced counsel and should avoid transforming the hearing on the settlement into a trial on the merits. *Bryan v.*

*Pittsburgh Plate Glass Co.*, 494 F.2d 799, 804 (3d Cir. 1974).

In this case, the Court has already determined at the time of preliminary approval that all the requirements of Rule 23 have been met. (*See* ECF No. 73). The only remaining issue is for the Court to make a final determination, that the settlement is fair, reasonable, and adequate.

The Third Circuit has identified nine factors—the *Girsh* factors—that a trial court should consider when determining whether a proposed class action settlement warrants approval. *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010) (*citing Girsh*, 521 F.2d at 157. These include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157; *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005).[2]

---

[2] The *Girsh* factors are not exhaustive, however, and the Third Circuit has advised that the trial court may consider other relevant factors "illustrative of additional inquiries that in many instances will be useful for a thoroughgoing analysis of a

An application of these factors in this case weigh in favor of approval of the settlement, therefore final approval of the settlement should be granted.

## B. APPLICATION OF THE GIRSH FACTORS

### 1. Complexity, Expense and Likely Duration of the Litigation

"The first *Girsh* factor 'captures the probable costs, in both time and money of continued litigation.'" *Sullivan*, 667 F.3d at 320 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 536 (3d Cir. 2004)).

If this litigation were to proceed, significant expense and delay would result, which likely would not benefit Class members. Defendants expressly state in the Agreement that they do not admit liability; however, Defendants agreed to the

---

settlement's terms." *Sullivan*, 667 F.3d at 320 (quoting *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333 at 350). These factors include:

> [T]he maturity of the underlying substantive issues, as measured by the experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved-or likely to be achieved-for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable. [*Id.* (quoting *Prudential,* 148 F.3d at 323).]

settlement to "to avoid the expense, burden, and uncertainty from continuing to pursue an adjudication on the merits, and to take advantage of the benefits from putting to rest all claims that were or could have been asserted by Plaintiff including the Plaintiff's and the Class members' claims arising from Defendants' initial written communications . . . ." Agreement Recital ¶L.

Plaintiff agreed to the settlement because the settlement is in the best interest of the Class, and due to the expense and length of time necessary to prosecute this action through trial, and the uncertainty of the outcome of this lawsuit and the inevitable appeals. If the settlement is not approved, the claims would continue to be litigated in Court, potentially for several years. Continued litigation "would not only further prolong the litigation but also reduce the value of any recovery to the class." *Warfarin*, 391 F.3d at 536. Continued litigation would require significant judicial resources and would put an unnecessary burden on the parties, causing them to expend additional time and expenses. Avoiding "unnecessary and unwarranted expenditure of resources and time benefit[s] all parties." *In re Computron Software*, 6 F. Supp. 2d 313, 317 (D.N.J. 1998).

In addition, any judgment possibly obtained in this matter could be appealed, thereby further extending the duration of this litigation. The proposed settlement, on the other hand, removes the risk inherent in a trial and appeal, and provides excellent benefits to the Class.

## 2. The Reaction of the Class to the Settlement

"The second *Girsh* factor 'attempts to gauge whether members of the class support the settlement,' by considering the number of objectors and opt-outs and the substance of any objections." *Sullivan*, 667 F.3d at 321 (quoting *Prudential*, 148 F.3d at 318).

Pursuant to the Preliminary Approval Order and the mailed Notice, any Class member could either opt out of the settlement or file an objection by December 9, 2022. As of January 3, 2023, no one requested to be excluded or objected to the settlement. ECF No. 77 at ¶¶11-12. A mere "minimal number of objections and requests for exclusion" received from the Class members is consistent with other class settlement approved in the Third Circuit. *Sullivan*, 667 F.3d at 321.

## 3. The Stage of the Proceedings and the Amount of Discovery Completed

"The third *Girsh* factor 'captures the degree of case development that class counsel had accomplished prior to settlement,' and allows the court to 'determine whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *Sullivan*, 667 F.3d at 321 (quoting *Warfarin*, 391 F.3d at 537).

The parties have satisfied this factor. Defendants filed an answer to the Complaint (ECF No. 52) and denied any liability or wrongdoing. During the pendency of the action, the parties engaged in exchanges of information and

discovery and engaged in and ultimately conducted extensive settlement negotiations. Defendants produced information and discovery concerning the size of the putative class as well as Defendants' net worth. *See* Stern Decl. ¶8. The parties ultimately reached the class settlement agreement addressed herein after extensive settlement discussions and negotiations *Id.*

### 4. The Risks of Establishing Liability

The fourth *Girsh* factor "examine[s] what the potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them.'" *Sullivan*, 667 F.3d at 322 (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 237 (3d Cir. 2001) ).

When evaluating the benefits provided in a settlement versus the potential award at a trial, the Third Circuit has instructed that the settlement fairness factors must be judged "against the realistic, rather than theoretical, potential for recovery after trial." *Sullivan*, 667 F.3d at 323 (quotation omitted). In their answer (ECF No. 52) to the First Amended Complaint, Defendants have denied any violation of the FDCPA and maintained that it is not subject to any liability for the allegations in Plaintiff's Complaint. While Plaintiff believes that there are strong arguments and persuasive authority to support the application of the FDCPA to Defendants' activities, the issue would have required further litigation if this matter was not settled, and the outcome of litigation is never certain. As such, this factor also

weighs in favor of the settlement.

As part of the negotiated settlement, the parties considered the uncertainties of litigation and determined that settlement would be appropriate. Defendants have agreed to pay a sum which considers these risks yet comports with the statutory damages provided by the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k(a)(2)(B). Agreement at ¶2.b.

**5.  The Risks of Establishing Damages**

"As with the fourth *Girsh* factor, 'this inquiry attempts to measure the expected value of litigating the action rather than settling it at the current time.'" *Sullivan*, 667 F.3d at 522 (quoting *Cendant*, 264 F.3d at 238-39). The Court must determine whether the proposed settlement is within a range that experienced attorneys could accept in light of the relevant risks of the litigation. *GM Truck,* 55 F.3d at 806.

Here, if this case were to proceed to trial, the Defendants' maximum liability to the class would not exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector. *See* 15 U.S.C. § 1692k(a)(2)(B). Defendants have represented and produced discovery disclosing their net worth to Class Counsel. *See* Stern Decl. ¶8. Therefore, the payment of $10,300.00 to the Class provides excellent relief to the Class, which would be uncertain at trial. *Id.*

The Court in *In re Cendant Corp. Litig.* observed that approved class action

settlements tend to range from 1.6% to 14% of claimed maximum damages. 264 F.3d 201, 241. This case provides damages considerably higher than the 1.6% threshold. This factor favors the approval of the class settlement.

### 6. Risks of Maintaining the Class Action Through Trial

"The sixth *Girsh* factor 'measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial' in light of the fact that 'the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the class action.'" *Sullivan*, 667 F.3d at 322 (quoting *Warfarin*, 391 F.3d at 537). After the Supreme Court's opinion in *Amchem*, 521 U.S. 591 (1997), this factor "may not be significant to a court's determination of the approval of a settlement." *Prudential,* 148 F.3d at 321. Particularly because this is a Class, "[T]his factor adds little to the consideration of the fairness of the settlement." *In re Safety Components Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 91 (D.N.J. 2001).

As discussed above, this litigation carried significant risks. If the Plaintiff rejected settlement in favor of pursuing litigation, the Court might not have certified this matter as a class action. This risk weighs toward settlement.

### 7. Ability of the Defendants to Withstand Greater Judgment

The seventh *Girsh* factor considers "'whether the defendants could withstand a judgment for an amount significantly greater than the settlement.'"

*Sullivan,* 667 F.3d at 323 (quoting *Cendant*, 264 F.3d at 240). The Third Circuit

has noted that this fact alone does not weigh against settlement approval. *See, e.g.,*

*Warfarin, supra*, 391 F.3d at 538. Where no issue is raised as to whether a

defendant can afford larger judgment, this is a neutral factor, weighing neither in

favor of nor against the approval of the settlement. *See In re Am. Investors Life Ins.*

*Co. Annuity Mktg. & Sales Practices Litig.,* 263 F.R.D. 226, 242 (E.D. Pa. 2009).

The Court must "measure[] the value of the settlement itself to determine

whether the decision to settle represents a good value for a relatively weak case or

a sell-out of an otherwise strong case." *GM Truck*, 55 F.3d at 806.

> [I]n cases primarily seeking monetary relief, the present
> value of the damages plaintiffs would likely recover if
> successful, appropriately discounted for the risk of not
> prevailing, should be compared with the amount of the
> proposed settlement. The evaluating court must, of course,
> guard against demanding too large a settlement based on
> its view of the merits of the litigation; after all, settlement
> is a compromise, a yielding of the highest hopes in
> exchange for certainty and resolution.

*Id.* (citations omitted).

If this case were to proceed to trial, the Defendants' maximum liability to

the class would not exceed the lesser of $500,000 or 1 per centum of Defendants'

net worth. *See* 15 U.S.C. § 1692k(a)(2)(B). Defendant confidentially produced

discovery regarding its net worth. Stern Decl. ¶8. Being subject to additional liability,

as well as litigation expenses and continued accrual of fees under the FDCPA, can be

a significant financial burden on the company. This factor favors approving the class settlement.

## 8. The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and All Attendant Risks of Litigation

"The final two *Girsh* factors consider 'whether the settlement represents a good value for a weak case or a poor value for a strong case.'" *Sullivan*, 667 F.3d at 323. "The reasonableness of a proposed settlement is assessed by comparing 'the present value of the damages plaintiffs would likely recover if successful [at trial], appropriately discounted for the risk of not prevailing … with the amount of the proposed settlement.'" *Id.* at 323-24 (quoting *Prudential*, 148 F.3d at 322). In evaluating the settlement, the Court should "guard against demanding too large a settlement based on its view of the merits of the litigation," since "settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *GM Truck*, 55 F.3d at 806 (citations omitted).

The fairness of the settlement process and of the Settlement Agreement itself also was shaped by the experience and reputation of counsel, an important factor in final approval of class action settlements. *See GM Truck*, 55 F.3d at 787-88; *Fisher Bros.*, 604 F. Supp. at 452 ("The professional judgment of counsel involved in the litigation is entitled to significant weight.")

The settlement was specifically negotiated by experienced counsel to meet

all the requirements of Rule 23 as discussed in *Amchem*. The settlement was not the product of collusive dealings, but rather was the result of extensive arm's-length negotiations by counsel for the parties. Furthermore, continued litigation would be long, complex and expensive, and a burden to court dockets. *Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995) (expense and duration of litigation are factors to be considered in evaluating the reasonableness of a settlement); *Weiss v. Mercedes-Benz of N. Am. Inc.*, 899 F. Supp. 1297, 1301 (D.N.J. 1995) (burden on crowded court dockets to be considered).

Lastly, it is the opinion of Class Counsel that the settlement achieved in this case provides excellent benefits to the members of the Class, when considering the limitations on damages in an FDCPA class action.

### V.    THE PROPOSED INCENTIVE AWARD TO THE CLASS REPRESENTATIVE IS FAIR AND REASONABLE

Incentive payments to named class representatives are commonly approved by the federal courts in class action settlements. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) ("Incentive awards are fairly typical in class action cases. Such awards are discretionary and are intended to compensate class representatives for work done on behalf of the class.") (citations omitted); *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 118 (E.D. Pa. 2005) (reviewing cases in which Courts approved incentive awards in settlement to named class

action plaintiffs); *In Re Compact Disc Minimum Advertised Price Antitrust Litigation*, 292 F. Supp. 2d 184, 189 (D. Me. 2003); *Lachance v. Harrington*, 965 F. Supp. 630, 652 (E.D. Pa. 1997); *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 535 (E.D. Pa. 1990); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001)).

The National Association of Consumer Advocates has described the purpose behind incentive payments to named class action plaintiffs as follows:

> Awards to named plaintiffs are appropriate in recognition of their willingness to undertake the representation of class members. Consumers who represent an entire class should be compensated reasonably when their efforts are successful and compensation would not present a conflict of interest. The amount that is reasonable depends on the circumstances of the case…

National Association of Consumer Advocates, *Standards and Guidelines for Litigating and Settling Consumer Class Actions* 31 (June 2014), http://www.consumeradvocates.org/sites/default/files/NACA%20Class%20Action%20Guidelines%20Updated%20May%202014.pdf.[3] *See also In re Cendant Corp.,*

---

[3] "Courts have found the NACA guidelines to be instructive, *State v. Homeside Lending, Inc.*, 175 Vt. 239, 826 A.2d 997, 1009-11 (Vt. 2003), and useful, *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1028-30 (N.D. Ill. 2000), and have referred to them in evaluating settlements." *Machulsky v. Lilliston Ford, Inc.*, No. A-2987-06T5, 2008 N.J. Super. Unpub. LEXIS 2603 at *11 n.1, 2008 WL 2788073 at *4 n.1 (App. Div. July 21, 2008).

*Derivative Action Litig.*, 232 F. Supp. 2d 327, 344 (D.N.J. 2002) (stating that incentive awards reward the public service by lead plaintiffs).

Whether to grant incentive awards is entirely within the trial court's discretion. *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000), *cert. denied*, 532 U.S. 1038 (2001); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). There is "ample authority in this and other circuits for the approval of incentive awards." *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 257 (D.N.J. 2005) (collecting cases in which incentive awards were approved ranging between $1,000 and $50,000). Similar to attorneys in these cases, class representatives "conferred benefits on all other class members and they deserve to be compensated accordingly." *Id.* at 258 (quoting *In re Linerboard Antitrust Litig.*, 2004 U.S. Dist. LEXIS 10532, at *56 (E.D. Pa. June 2, 2004).

Here, as in other cases where incentive awards have been permitted, the named Plaintiff took action which "protected the interests of the Class Members and which have resulted in a Settlement that provides substantial economic and non-economic benefits for the Class Members." *Enter. Energy Corp. v. Columbia Gas Transmission Corp.,* 137 F.R.D. 240, 251 (S.D. Ohio 1991). Plaintiff participated in the litigation process and settlement. (ECF No. 71-3 at ¶¶29-31.) Plaintiff understands the class claims and his responsibility as a class representative. *Id.* Plaintiff agreed to participate in the litigation process whether

through settlement or litigation. *Id.* It is highly unlikely that this litigation would have continued for as long as it has if the case proceeded merely on an individual basis devoid of any class claims. Thus, Plaintiff forestalled relief on his individual claims to ensure that relief was provided to the Class. If this settlement is not approved and the matter is further litigated, Plaintiff is willing to participate in further discovery and testify at trial if necessary. Plaintiff approved the terms of the Class Action Settlement Agreement on June 8, 2022. *See* Stern Decl. Ex. A.

The Settlement Agreement provides that Defendants will pay Plaintiff, Randy Hopkins, $1,000.00 as an incentive payment in recognition of Plaintiff's efforts on behalf of the Class. Agreement ¶2.b. "An incentive award is meant to compensate the named plaintiff for any personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit." *Berrios v. Sprint Corp.*, CV-97-0081 (CPS), 1998 U.S. Dist. LEXIS 22833, at *9 (E.D.N.Y. Sep. 10, 1998). In *McBean v. City of N.Y.*, 233 F.R.D. 377, 391 (S.D.N.Y. 2006), the court approved incentive awards for plaintiffs ranging from $25,000 to $35,000 when, "when compared to incentive awards given generally to named plaintiffs across a variety of class actions, the awards given to the class representatives under the settlement here fall solidly in the middle of the range." *See, Sheppard v. Consol. Edison Co. of N.Y., Inc.*, 94-CV-0403 (JG), 2002 U.S. Dist. LEXIS 16314, 2002 WL 2003206 (E.D.N.Y. Aug. 1, 2002) (collecting

cases). Here, the requested incentive awards are less than 5% of what *McBean* found to be the "middle of the range" of approved incentive awards.

The relatively nominal incentive award here is well within the range of incentive awards approved by courts in other class actions. *See*, *In re Ins. Brokerage Antitrust Litig.,* 579 F.3d 241, 285 (3d Cir. 2009) (finding that the court did not err in granting final approval of a settlement that included $150,000 in incentive awards distributed between fifteen named plaintiffs); *Bogosian v. Gulf Oil Corp.,* 621 F. Supp. 27, 32 (E.D. Pa. 1985) (granting incentive awards of $20,000 to each class representative); *Dewey v. Volkswagen of Am.,* 728 F. Supp. 2d 546, 577-78 (D.N.J. 2010) *rev'd and remanded on other grounds Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3d Cir. 2012) (approving incentive awards of $10,000 each to nine named Plaintiffs when the awards were agreed to and did not diminish the class recovery); *Varacallo*, 226 F.R.D. at 258–29 (incentive awards ranging from $1,000 to $50,000); *Orloff v. Syndicated Office Sys, Inc.*, No. 00–5355, 2004 U.S. Dist. LEXIS 7151, at *4 (E.D. Pa. Apr.22, 2004) ($5,000); *Bonett v. Educ. Debt Servs., Inc.*, No. 01–6528, 2003 U.S. Dist. LEXIS 9757, at *20 (E.D. Pa. May 9, 2003) ($4,000). A comprehensive academic study of class action incentive awards conducted in 2006 found that the median award was $4,357. Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. REV. 1303, 1308 (2006).

Furthermore, the Parties did not discuss counsel's fees and expenses until after agreeing to the Class's relief. Stern Decl. ¶16. Doing so avoided any appearance of conflicting interests. Furthermore, none of counsel's fees will be paid from or diminish the Class Fund. Therefore, no part of the fees come from what might otherwise have been recovered by the class. Furthermore, to ensure the lack of collusion, both the attorneys' fees and the incentive award are subject to the Court's approval without affecting its approval of the settlement agreement.

## VI.    THE FEES AND EXPENSES SOUGHT BY CLASS COUNSEL ARE FAIR AND REASONABLE AND SHOULD BE APPROVED

Reasonable attorneys' fees and costs are mandated by the FDCPA in a successful action. 15 U.S.C. § 1692k(a)(3) ("in the case of any successful action to enforce the foregoing liability, the costs of the action together with a reasonable attorney's fee as determined by the court."). The Agreement, at ¶5.d., provides Defendants' stipulation that, without admitting any wrongdoing, the Agreement's relief to the Class and the Plaintiff makes this a "successful action" under the FDCPA. The Third Circuit has held that fees are mandated in a successful FDCPA action and that in a typical case, the court should determine what constitutes a reasonable fee in accordance with the substantial Supreme Court precedent pertaining to the calculation of reasonable attorneys' fees. *Graziano v. Harrison*, 950 F.2d 107, 113-14 (3d Cir. 1991) (*citing Hensley v. Eckerhart*, 461 U.S. 424,

433-37 (1983)).

Defendants agree to pay Plaintiff's Class Counsel's reasonable attorney's fees and litigation expenses in the sum of $51,000, subject to Court approval (*See* Agreement at ¶¶2.c., 2.d., which includes costs and expenses, time already spent and time to be spent through the Final Fairness Hearing, including finalizing the settlement, preparing settlement documents, drafting briefs, attending hearings, responding to any objections to the settlement, and monitoring the settlement and settlement administration. *Id*. The $51,000 that Class Counsel seeks for attorney's fees and costs is reasonable.

### A. LODESTAR ANALYSIS CONFIRMS THAT THE FEE REQUESTED IS REASONABLE

The FDCPA is among a limited number of statutes that authorize a court to depart from the American Rule and award attorney fees to a prevailing party. MANUAL FOR COMPLEX LITIGATION (THIRD), § 24.11 (1995) ("MANUAL"), citing *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 684 (1983). As explained in the MANUAL,

> The analysis of attorneys' fees in a statutory fee (or fee-shifting) case differs philosophically and jurisprudentially from that which applies to a common fund case. The shifting of attorneys' fees in a statutory fee case serves the public policy of encouraging private enforcement of substantive rights created by Congress or the Constitution. For that reason, the lodestar is the appropriate method.

MANUAL, at §24.13 (citations omitted). Third Circuit jurisprudence has repeatedly made the same point. *Gunter v. Ridgewood Energy Corporation*, 223 F.3d 190, 195 n.1 (3d Cir. 2000) (noting that the "lodestar method is more commonly applied in statutory fee-shifting cases, and is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage of recovery method would provide inadequate compensation." (quoting *Prudential*, 148 F.3d at 333 (3d Cir. 1998)); *see also Brytus v. Spang & Company*, 203 F.3d 238, 242-43 (3d Cir. 2000) (no abuse of discretion in applying lodestar analysis to set a reasonable attorney's fee under a statutory fee provision).

In fee-shifting cases, the Supreme Court has held that the "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley*, 461 U.S. at 433; *see also Gunter*, 223 F.3d at 195 n.1. The lodestar is presumed to yield a reasonable fee. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). Certainly, the lodestar may be reduced if a plaintiff so agrees, or if "billing judgment" so warrants. *See Hensley*, 461 U.S. at 433. But any other reduction may only be made where there is conclusive evidence that the hours were not reasonably expended or the requested

hourly rate is not reasonable. *See, e.g.*, *Hensley*, 461 U.S. at 434 (hours not reasonable if excessive, redundant or unnecessary); *Blum v. Stenson*, 465 U.S. 886, 895 (1984) (rates to be calculated according to prevailing market in the relevant community).

Where, as here, the Parties have agreed on the amount of fees, the Court's inquiry is to assure that the agreed upon amount is not inflated to suggest collusion. Indeed, the United States Supreme Court has encouraged the consensual resolution of attorney's fees in class cases. In *Hensley*, 461 U.S. at 437, the United States Supreme Court wrote, "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee."

The lodestar and expenses of Class Counsel in this matter are as follows: time dedicated to the case by the Kim Law Firm equals 205.40 hours on this case, with a lodestar of $99,973 at current rates (an average rate of $487); and costs and expenses incurred by the Kim Law Firm equal to $485.17. *See* Kim Decl. ¶¶ 24-27. In total, combined fees and costs of the Kim Law Firm equal $100,458.17. *Id.* Thus, the Agreements provision of $51,000.00 for Class Counsel's fees and costs—being nearly half of the Firm's lodestar—is eminently reasonable.

## B. PROPORTIONALITY IS NOT REQUIRED IN ASSESSING THE FEE REQUEST

The fact that the amount obtained on behalf of the Class is less than Class Counsel's agreed upon amount for fees and expenses does not make Class

Counsel's fees and costs unreasonable. *See Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1041-42 (3d Cir. 1996); *Sheffer v. Experian Information Solutions, Inc*., 290 F. Supp. 2d 538, 550-51 (E.D. Pa. 2003) ("proportionality analysis between the amount of damages awarded and the amount of counsel fees requested … is an impermissible basis upon which to reduce a fee award"); *Oslan v. Law Offices of Mitchell N. Kay*, 232 F. Supp. 2d 436, 444 (E.D. Pa. 2002).

In discussing fee awards for prevailing plaintiffs under the FDCPA, courts have recognized that the amount of a statutory fee-shifting award cannot be tied in any fashion to the amount of the statutory damage award. For example, in *Cope v. Duggins*, 203 F. Supp. 2d 650, 656 (E.D. La. 2002), the court found that $8,000 to the class (or approximately $12 per class member) was a reasonable settlement, and that the plaintiff was entitled to $25,000 as a reasonable counsel fee. The court pointed out that the fees might seem out of proportion to the amount to be divided among the class, but that "this imbalance is principally attributable to the design of the FDCPA damages provision … which caps the amount of damages in a class action lawsuit." *Id.* at 656; *see also Norton v. Wilshire Credit Corp.*, 36 F. Supp. 2d 216, 221 (D.N.J. 1999) (awarding $57,000 in attorney's fees where there was a $5,800 award to plaintiff).

As in *Cope* and other cases, it is in the nature of consumer protection

litigation that statutory damages are often small in relation to the fees incurred in prevailing in the case. Under statutes such as the FDCPA, the amount of attorney fees awarded is not required to be proportionate to the amount of damages recovered. This is to encourage private counsel to enforce important consumer rights legislation. Noting that Congress contemplated that civil plaintiffs would act as private attorneys general, the Third Circuit has stated:

> Congress provided fee shifting to enhance enforcement of important civil rights, consumer protection, and environmental policies. By providing competitive rates we assure that attorneys will take such cases, and hence increase the likelihood that the congressional policy of redressing public interest claims will be vindicated.

*Student Public Interest Research Group of New Jersey v. AT&T Bell Laboratories*, 842 F.2d 1436, 1449 (3d Cir. 1988).

Under all the circumstances existing here, the agreed upon amount of $51,000.00 for Class Counsel's fees and costs is reasonable. This amount does not account for time to be spent subsequent to the filing of this instant motion, preparing for and attending the Final Approval hearing, time in connection with disbursal of the settlement fund, responding to any issues or questions raised by Class members, or for other time going forward. For the foregoing reasons, Class Counsel respectfully requests that the Court award $51,000.00 for Class Counsel's fees and costs.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant

final approval of the settlement, grant the service and incentive award to Plaintiff,

and grant an award of Class Counsel's fees and costs as requested herein.

Respectfully submitted,

*s/Philip D. Stern*
Philip D. Stern
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, NJ 07601
Tel. and Fax 201-273-7117
ykim@kimlf.com

*Attorneys for Plaintiffs and the Class*

Dated: February 2, 2023